# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SHENETTA JONES,
   Plaintiff,

v.           1:14-cv-00282-TFM

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF
SOCIAL SECURITY,
   Defendant.

## MEMORANDUM OPINION AND ORDER

June 10, 2015

**I. Introduction**

  Shenetta Jones ("Plaintiff") brought this action for judicial review of the decision of the Commissioner of Social Security ("Commissioner"), which denied her application for supplemental security income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 1381-1383(f). Now pending before the Court are the parties' cross-motions for summary judgment (ECF Nos. 8, 10), which have been fully briefed (ECF Nos. 9, 12) and are ripe for disposition. Plaintiff also filed a Statement of Material Facts (ECF No. 11). For the following reasons, Plaintiff's motion will be **DENIED**, and the Commissioner's motion will be **GRANTED**.

**II. Background**

  Plaintiff was born on November 10, 1976.[1] (R. 39). She left high school in the eleventh grade and does not have a GED. (R. 27). She can communicate "clearly and concisely" in

---

1. As of her alleged onset date, Plaintiff was 35 years old, making her a "younger person" under the Social Security Administration Regulations. 20 C.F.R. § 404.1563(c) ("If you are a younger person (under age 50), we generally do not consider that your age will seriously affect your ability to adjust to other work."). *Id.*

1

English (R. 301). She is not married and has five children from two different fathers. (R. 298). Her children are not currently living with her. *Id.* She has no past relevant work experience (R. 29), however she has previously been employed for short periods of time as a machinist, caregiver, assembly line worker and waitress. (R. 190). She has not engaged in substantial gainful activity since her alleged onset date of November 30, 2011. (R. 29). Because this appeal relates to Plaintiff's intellectual disability and deficits in adaptive functioning, only those pertinent facts will be reviewed and discussed in this opinion.

    A.    **Medical Evidence**

Plaintiff underwent psychological evaluations to assess her IQ and educational needs while attending elementary school in Erie, Pennsylvania. The first evaluation, conducted on June 12, 1984 by a school psychologist when Plaintiff was in first grade, resulted in a Verbal IQ of 67, Performance IQ of 92, and Full Scale IQ of 78. (R. 265). A second evaluation, conducted on February 12, 1987 when Plaintiff was in third grade, resulted in a Verbal IQ of 67, Performance IQ of 90 and Full Scale IQ of 76. (R. 264). The psychologist noted that the Plaintiff's "[i]ntellectual potential fell within the borderline range." *Id.*

On April 16, 1992 when Plaintiff was in eighth grade, she underwent a two-year re-evaluation review to determine her eligibility for continued special education needs. (R. 262). The school psychologist relied upon the IQ scores obtained during the February 1987 assessment and diagnosed Plaintiff with a primary learning disability. *Id.* It was also noted that Plaintiff was reading on a fifth grade level and had math abilities equivalent to the seventh grade. *Id.* Plaintiff was most successful when she had close supervision of her written work. *Id.*

On October 29, 1993, the school district issued a comprehensive evaluation report. (R. 257). The report again noted the IQ scores from the February 1987 evaluation and determined

that Plaintiff was functioning below average. *Id.* The report also noted that Plaintiff had poor peer relations and numerous referrals for behavioral issues. *Id.* She remained eligible to continue special education services on a part-time basis. (R. 258).

On April 18, 2011, Glenn Bailey, PH.D. ("Dr. Bailey") performed a mental status and intellectual evaluation upon request of the Social Security Administration. (R. 297). Plaintiff arrived early for her appointment and it was noted that her grooming and hygiene were appropriate. *Id.* Plaintiff stated that she had a good childhood and was never abused or traumatized as she was growing up. *Id.* She was "kicked out" of high school in the eleventh grade after a fight. (R. 298). Plaintiff stated to Dr. Bailey that she was not currently working "[b]ecause of my back. I have scoliosis." *Id.* However, she did work at a concession stand during the summer of 2010. *Id.* Dr. Bailey administered the Folstein Mini Mental Status Examination and Plaintiff scored 29 out of 30. (R. 300). She had difficulty doing the serial sevens. However, she was able to spell the word "world" backwards without any problems. *Id.* It was also noted that there were no problems with the productivity of her thinking patterns and her thoughts were goal-oriented and relevant. *Id.*

Dr. Bailey also conducted a WAIS-III IQ test. (R. 303). Plaintiff achieved a Verbal IQ of 70, Performance IQ of 77 and a Full Scale IQ of 71 placing her within the "borderline, almost mentally retarded range." *Id.* Upon further evaluation of the subtests, Dr. Bailey noted that the Plaintiff scored poorest in comprehension, indicating that she had difficulty understanding basic interactions. *Id.* She also scored poorly in vocabulary. *Id.* However, Dr. Bailey determined that there was not a need for outpatient mental health recommendations at the time of the evaluation. (R. 304).

Accompanying the mental status and intellectual evaluation was a check box form in which Dr. Bailey checked that the Plaintiff had no limitation in understanding and remembering short, simple instructions. (R. 307). He also noted that she had no issues with understanding and remembering detailed instructions. *Id.* However, Dr. Bailey noted that she would have slight problems with carrying out detailed instructions and slight deficits in her ability to make judgments on simple work-related decisions. (R. 307). Although her test scores reflected that she had difficulty understanding basic social interactions, Dr. Bailey noted that she had no issue in interacting appropriately with the public, supervisors and co-workers. *Id.* However, he also noted that she had slight problems with responding to work pressures in a usual work setting and changes in a routine work setting. *Id.*

On December 27, 2012, the ALJ conducted a hearing at which Plaintiff was represented by counsel and testified. Plaintiff's attorney stated that she suffers from scoliosis and that her main issue is the pain associated with scoliosis. (R. 38). Plaintiff also testified to the pain she endures and her limitations of walking and standing. (R. 41-43). When asked if she is currently receiving any kind of professional mental health treatment, Plaintiff testified that she was not. (R. 45). She further testified that she did not have any kind of mental health problem that would require treatment. *Id.* When asked if she were able to care for her own personal needs (i.e. bathing and dressing), Plaintiff testified that she was able to care for herself though it may take her awhile. *Id.*

The ALJ carefully followed the applicable five-step sequential evaluation process. He found that Plaintiff had not engaged in substantial gainful activity since November 30, 2011 and that she had severe impairments including chronic back pain, scoliosis, and borderline intellectual functioning. (R. 20). Although Plaintiff claimed that she was disabled due to her

4

chronic back pain and scoliosis, the ALJ also considered her mental impairment under the requirements of listing 12.05. (R. 21). The ALJ explained that Plaintiff's mental impairments did not rise to a Listed Impairment and then separately engaged in a more-detailed analysis of how the mental impairments affected Plaintiff's residual functional capacity. (R. 24-29). The ALJ conceded that Plaintiff's borderline intellectual function technically meets the definition of a "severe" impairment. However, the ALJ also noted that Plaintiff did not allege the condition as a basis for her disability; had not asserted any limitations associated with her mental condition; and had not sought treatment or assistance for the mental condition. (R. 28). Thus, the ALJ found that Plaintiff is not disabled and is capable of successfully adjusting to unskilled work that exists in significant numbers. (R. 29-30).

### B. Procedural History

Plaintiff previously filed an application for SSI that was denied on April 20, 2010. (R. 18). An additional review of that decision was not requested. Plaintiff thereafter filed another application on December 2, 2010, which was denied on July 21, 2011. *Id.* Again, no request was made for further review of that decision.

At issue here, Plaintiff protectively filed a third application for SSI on November 30, 2011, having alleged disability as of January 1, 2001, due to chronic back pain, scoliosis and anemia. (R. 24). After Plaintiff's claims were denied at the administrative level, she requested a hearing, which was conducted via video on December 27, 2012. The Plaintiff appeared in Erie, Pennsylvania, and Administrative Law Judge James J. Pileggi ("ALJ") presided over the hearing from Mars, Pennsylvania. Plaintiff was represented by counsel and testified at the hearing, as did an impartial vocational expert. (R. 34-50).

On January 24, 2013, the ALJ concluded that the Plaintiff is not disabled within the meaning of the Social Security Act. (R. 19). The ALJ's decision became the final decision of the Commissioner on January 24, 2013, when the Appeals Council denied Plaintiff's request to review the decision of the ALJ. (R. 1).

On November 12, 2014, Plaintiff filed her Complaint in this Court, in which she seeks judicial review of the decision of the ALJ. The parties' cross-motions for summary judgment then followed.

## III.  Legal Analysis

### A.  Standard of Review

The Act strictly limits this Court's power to review the Commissioner's final decision. 42 U.S.C. §§ 1383(c)(3). "This Court neither undertakes a de novo review of the decision, nor does it re-weigh the evidence of the record." *Thomas v. Massanari,* 28 F.App'x 146, 147 (3d Cir. 2002). Instead, this Court's "review of the Commissioner's final decision is limited to determining whether that decision is supported by substantial evidence." *Hartranft v. Apfel,* 181 F.3d 358, 360 (3d Cir. 1999). If the Commissioner's finding is supported by substantial evidence, it is conclusive and must be affirmed by the Court. 42 U.S.C. § 405(g); *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). The United States Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389 (1971). It consists of more than a scintilla of evidence, but less than a preponderance. *Thomas v. Comm'r of Soc. Sec.*, 625 F.3d 798 (3d Cir. 2010). Importantly, "[t]he presence of evidence in the record that support a contrary conclusion does not undermine the Commissioner's decision so long as the record provides

substantial support for that decision." *Malloy v. Comm'r of Soc. Sec.,* 306 F. App'x 761, 764 (3d Cir. 2009).

**B. Sequential Evaluation Process**

When considering to resolve the issue of whether an adult claimant is or is not disabled, the Commissioner utilizes a five-step sequential evaluation. 20 C.F.R. §§ 404.1520 and 416.920 (1995). This process requires the Commissioner to consider, in sequence, whether a claimant (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to his or her past relevant work, and (5) if not, whether he or she can perform other work. *See* 42 U.S.C. § 404.1520; *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 545-46 (3d Cir. 2003) (quoting *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 118-19 (3d Cir. 2000)).

To qualify for disability benefits under the Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period." *Fargnoli v. Massanari*, 247 F.3d 34, 38-39 (3d Cir. 2001) (internal citation omitted); *See also* 42 U.S.C. § 423 (d)(1) (1982). This may be done in two ways: (1) by introducing medical evidence that the claimant is disabled per se because he or she suffers from one or more of a number of serious impairments delineated in 20 C.F.R. Regulations No. 4, Subpt. P, Appendix 1, *see Heckler v. Campbell*, 461 U.S. 458 (1983); *Newell*, 347 F.3d at 545-46; *Jones v. Barnhart,* 364 F.3d 501, 503 (3d Cir. 2004); or, (2) in the event that claimant suffers from a less severe impairment, by demonstrating that he or she is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy . . . ." *Campbell*, 461 U.S. at 461 (citing 42 U.S.C. § 423 (d)(2)(A)).

7

In order to prove disability under the second method, a claimant must first demonstrate the existence of a medically determinable disability that precludes a plaintiff from returning to his or her former job. *Newell*, 347 F.3d at 545-46; *Jones*, 364 F.3d at 503. Once it is shown that claimant is unable to resume his or her previous employment, the burden shifts to the Commissioner to prove that, given claimant's mental or physical limitations, age, education and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Rutherford*, 399 F.3d at 551; *Newell*, 347 F.3d at 546; *Jones*, 364 F.3d at 503; *Burns v. Barnhart*, 312 F.3d 113, 119 (3d Cir. 2002).

When a claimant has multiple impairments, which may not individually reach the level of severity necessary to qualify any one impairment for Listed Impairment status, the Commissioner nevertheless must consider all of the impairments in combination to determine whether, collectively, they meet or equal the severity of a Listed Impairment. *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 502 (3d Cir. 2009); 42 U.S.C. § 423(d)(2)(C) ("in determining an individual's eligibility for benefits, the Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity").

**C.     Discussion**

Plaintiff raises two arguments in support of her motion. First, she contends that the ALJ erred in having concluded that there was not a valid Verbal IQ score of 60 through 70. Second, she contends that the ALJ erred when he did not state the specific definition of "deficits in adaptive functioning" that was applicable. Neither of these contentions have merit.

Mental impairments are considered under the requirements for Listing 12.05, which provides:

> Intellectual disability refers to significantly subaverage general intellectual function with deficits in adaptive functioning initially manifested during the development period; *i.e.,* the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in paragraphs A, B, C, or D are satisfied.
>
> A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded; OR
>
> B. A valid verbal, performance, or full scale IQ of 59 or less; OR
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function; OR
>
> D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
>     1. Marked restriction of activities of daily living; or
>     2. Marked difficulties in maintaining social functioning; or
>     3. Marked difficulties in maintaining concentration, persistence, or pace; or
>     4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, Subpart P, Appx. 1, § 12.05 (West).

To meet the requirements of the Listing, there must be a medically determinable impairment that satisfies the criteria of the Listing which is not satisfied by a diagnosis alone. 20 C.F.R. 416.925(d). The requirements that must be met for Listing 12.05 include the Listing introduction and the severity level criteria. The introduction to Listing 12.05 provides, in relevant part that, an intellectual disability refers to significantly subaverage general intellectual function "with deficits in adaptive functioning." To determine whether the introduction of Listing 12.05 has been met, an ALJ should consult any one of four professional organizations that work with mental retardation for the measurement criteria. Technical Revisions to Medical Criteria for Determinations of Disability, 67 FR 20018 (April 24, 2002); *See also Logan v. Astrue,* 2008 WL

4279820 at *8 (W.D. Pa. Sept. 16, 2008). One of the authorized resources is the DSM-IV. An ALJ must then consider all evidence in the record about the impairment, including medical opinions to determine if the Listing criteria have been satisfied. 20 C.F.R. § 416.920(b) (West). With that background, the Court will address the arguments raised by Plaintiff.

1. **The ALJ did not err in his analysis of Plaintiff's intellectual disability**

Plaintiff argues that the ALJ erred because he rejected the Plaintiff's IQ scores and relied instead on a Global Assessment of Function (GAF) score. According to Plaintiff, "there was no basis for concluding that [the] IQ scores were not valid." Pl.'s Br. at 7 (ECF No. 12). Plaintiff contends that an ALJ cannot reject IQ scores on the basis of his own lay judgment. She also faults the ALJ for having placed too much emphasis on her prior work history and for having concluded that her work history demonstrated intellectual functioning that was inconsistent with her IQ scores.

An ALJ may reject IQ scores that are inconsistent with the record as long as the basis for doing so is adequately explained. *Yurek v. Colvin*, 2014 WL 4078592, at *9 (M.D. Pa. Aug. 18, 2014) (citing *Schmidt v. Commissioner of Social Security*, 2013 WL 1386881 at *1 (W.D. Pa. April 4, 2013). *See also Markle v. Barnhart*, 324 F.3d 182, 187 (3d Cir.2003) (it is not required to accept a claimant's IQ scores and [an ALJ] may reject scores that are inconsistent with the record). Furthermore, IQ scores of 40 or above assessed before the age of 16 are only valid for a period of two years. *See* C.F.R. Part 404, Subpt. P, App. 1, § 112.00(D)(10). The scores on which Plaintiff has relied were from approximately 22 years ago, when she was eight and eleven years old.

As an ALJ is required to consider all of the evidence, a GAF score is relevant in evaluating the additional requirements in Listing 12.05. A GAF score is a "numerical summary

of a clinician's judgment of [an] individual's overall level of functioning ..." *See* Diagnostic and Statistical Manual of Mental Disorders (DSM–IV), 34 (4th ed., text rev., Am. Psychiatric Ass'n 2000). As Plaintiff has correctly pointed out under the Social Security Administration rules, a GAF score is not considered to have a "direct correlation to the severity requirements." 65 Fed.Reg. 50746, 50764–65 (Aug. 21, 2000). Nevertheless, the GAF scale constitutes acceptable and reliable medical evidence. *See Colon v. Barnhart*, 424 F.Supp.2d 805, 812 (E.D. Pa. 2006) (Although a claimant's GAF score does not have a " 'direct correlation to the severity requirements,' ... [the GAF score] remains the scale used by mental health professionals to 'assess current treatment needs and provide a prognosis.' Therefore, the GAF score [is] medical evidence ... and must be addressed in making a determination regarding a claimant's disability.") (quoting 65 Fed.Reg. 50764–65 )); *Dougherty v. Barnhart*, 2006 WL 2433792, at *9 (E.D. Pa. Aug 21, 2006); *Brooks v. Colvin*, 2015 WL 2339117, slip op. (M.D. Pa. May 13, 2015).

Furthermore, a GAF score includes psychological, social and occupational functioning (not including impairment in functioning due to physical or environmental limitations). Accordingly, a GAF score of 70 equates to some mild symptoms (for example a depressed mood) or some difficulties in social, occupational or school functioning but "generally functioning pretty well." DSM-IV at 32.

The ALJ properly evaluated the medical and non-medical record evidence. Plaintiff did not allege that she had any mental impairment that would hinder her ability to work. Instead, her only claims for why she could not work involved physical impairments including scoliosis, chronic back pain and anemia. (R. 38, 189, 214). Neither did she raise any mental impairments or limitations during her testimony before the ALJ. To the contrary, during her testimony she denied having any kind of mental health problems. (R. 45) Plaintiff also testified that she has

11

neither received mental health treatment nor has she ever taken medications to treat a mental health problem. *Id. See Cefalu v. Barnhart,* 387 F.Supp.2d 486, 493 (W.D. Pa 2005) (Plaintiff failed to allege mental impairment and testified he had no mental impairment, therefore, substantial evidence existed to support a finding of no disability). Nevertheless, the ALJ considered and properly analyzed her mental impairments under the requirements of listing 12.05 even though she had not claimed a disability due to a mental impairment.

The ALJ adequately explained his basis for having rejected Plaintiff's IQ scores. He explained that despite the valid verbal IQ score of 70 from the most recent testing assessed by Dr. Bailey, Plaintiff had a GAF score of 70 which suggested only some mild symptoms or slight difficulty in social, occupational, or school functioning. (R. 22). The ALJ found that Plaintiff's intellectual abilities are more accurately reflected in the remainder of Dr. Bailey's testing, which revealed that she is capable of performing basic logical sequencing types of tasks. *Id.* The ALJ referred to Plaintiff's work history to further support her capabilities of performing basic types of tasks. Plaintiff argues that she did not "hold" any of these jobs for a significant period of time and suggests that such is due to her intellectual disabilities. (R. 6). However, Plaintiff has consistently explained that she is not working due to her physical limitations and not a mental impairment. (R. 38, 69, 82, 231, 298).

Furthermore, the ALJ noted that a medical expert had testified in Plaintiff's prior hearing on April 6, 2010 (R. 54) and opined that Plaintiff did not meet the heightened requirements for Listing 12.05C. That medical concluded that while Plaintiff had IQ scores in the 60s[2], her impairment was not so severe as to meet or equal listing 12.05C. The ALJ stated that there was no evidence in the current record that would suggest that Plaintiff's intellectual capabilities had

---

2. The medical expert in the prior decision reviewed IQ scores assessed in 2005 and 2009, which are not part of the current record. Those IQ scores ranged from 65-81 with GAF scores of 60 and 65. (R.60-61).

12

deteriorated since that time. (R. 22). In fact, her current assessments revealed that there were no significant problems with her cognitive testing. See, e.g. Dr. Bailey's exam in 2011 (R. 297-308).

Plaintiff takes issue with the ALJ having referred to the medical expert's opinion from the prior hearing. Plaintiff states that reliance on the medical opinion from the April 6, 2010 hearing constitutes hearsay and cannot be the basis of the ALJ's denial. Pl.'s Br. at 7 n.2 (ECF No. 12). Plaintiff cites no authority for her argument. Conversely, "any oral or documentary evidence may be received". 5 U.S.C.A. §556(d) (West). The evidence may be received even though inadmissible under rules of evidence applicable to court procedure. 42 U.S.C.A. § 405(b)(1) (West). In fact, "it is well known that [an] examiner may consider hearsay evidence in coming to his decision," *Staskel v. Gardner,* 274 F. Supp. 861, 863 (E.D. Pa. 1967). *See also Pope v. Weinberger,* 397 F. Supp. 856, 861 (E.D. Pa. 1975) (relevant hearsay evidence [is] acceptable). In any event, the ALJ did not solely rely upon the prior medical expert's opinion. The reference to that opinion was merely to further substantiate the reasons for disregarding the IQ scores in the current record. Thus, the evidence of record substantially supports the ALJ's analysis and he adequately explained the basis for concluding that the IQ scores from elementary school, as well as the current IQ score, did not render Plaintiff disabled.

2. **The ALJ did not omit the criteria used to analyze Plaintiff's deficits in adaptive functioning**

Plaintiff argues that the ALJ erred by failing to state the specific definition of "deficits in adaptive functioning" that was applicable. Plaintiff contends that the rule in the Western District of Pennsylvania is that an analysis is deficient as a matter of law when an ALJ fails to definitively state which definition was applied. Pl.'s Br. at 10 (ECF No. 12). Plaintiff argues that in order to properly determine whether deficits in adaptive functioning exist, an ALJ must

explicitly apply either the DSM-IV or the criteria of other major health organizations. *Logan* at *8. *See also Barnes v. Barnhart,* 2004 WL 2681465 (10th Cir. 2004) (requiring ALJ to identify and apply one of the four standards of measurement rather than improvising his own definition).

The DSM-IV states: "[a]daptive functioning refers to how effectively individuals cope with common life demands and how well they meet the standards of personal independence. . . It is useful to gather evidence for deficits in adaptive functioning from one or more reliable independent sources (E.g., teacher evaluation and educational, developmental, and medical history)." DSM-IV at 40. The claimant must have significant limitations in adaptive functioning in at least two of the following skill areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skill, work, leisure, health and safety. *Id.* at 39.

No authority exists that states that an ALJ must definitely state which definition was applied. In fact, the authorities upon which Plaintiff relies to support her argument are distinguishable. In *Logan,* the case was not remanded for failure to cite to the DSM, but because the ALJ's opinion did not address Plaintiff's skills in the areas of communication, self-direction, work, leisure, health, and safety or in the areas of conceptual, social, and practical skills, or any of the other criteria which are included in the standards of the AAMR or APA. *Logan v. Astrue*, 2008 WL 4279820, at *10 (W.D. Pa. Sept. 16, 2008). In *Barnes*, the ALJ essentially improvised his own definition and merely cited to the SSA's Technical Revisions to Medical Criteria for Determination of Disability. *Barnes v. Barnhart*, 116 F. App'x 934, 942 (10th Cir. 2004).

Here it is clear that the ALJ implemented the DSM-IV standard. The ALJ explicitly cited to DSM-IV in his discussion of Listing 12.05. (R. 22). The ALJ then addressed each of the criteria set forth, reviewed and discussed the evidence of record which included assessments

14

from school psychologists, a state agency psychologist, and Dr. Bailey. After review of this evidence, the ALJ explained that Plaintiff has only mild restriction of daily activities, her social functioning is mildly limited and she is moderately limited in the areas of concentration, persistence or pace. (R. 23, 76-77, 89). The ALJ found that Plaintiff had no episodes of decompensation of extended duration because the evidence of record reflects that she has never been hospitalized due to mental impairments. (R. 23).

Moreover, the ALJ noted that Plaintiff testified that she is able to dress and bathe herself independently. (R. 45). Though she testified that she does not perform household chores, she attributes this inability to her physical condition. Conversely, during the evaluation with Dr. Bailey, she reported that she was able to maintain her activities of daily living and keep her house clean. (R. 23, 45, 302). She also stated to the state agency psychologist that she participates in daily activities such as caring for personal needs and performs routine household activities. (R. 74). Additionally, Plaintiff wrote in the Function Report completed in December 2011 that part of her daily activities included washing clothes and dishes (R. 232) and reported that she has no problems getting along with others. In fact, she stated in her Function Report that she spends as much time as possible with her children[3] and grandchildren. (R. 23, 235-236). Lastly, the ALJ discussed Plaintiff's previous work history as additional indicative evidence of how effectively she can cope with common life demands and meet the standards of personal independence. (R. 22).

In sum, the ALJ did not omit the criteria used to evaluate Plaintiff's deficits in adaptive functioning as he cited to DSM-IV. The ALJ also properly conducted the evaluation based on the

---

3. It is unclear to whom Plaintiff was referring to when she wrote "her children" as she had stated to Dr. Bailey that her own children did not live with her. It appears that she lived with her cousin's children. (R. 298).

15

DSM-IV definition and provided an adequate explanation supported by substantial evidence of record.

**IV.	Conclusion**

It is undeniable that Plaintiff has a number of impairments, and this Court is sympathetic and aware of the challenges which Plaintiff faces in seeking gainful employment. Under the applicable standards of review and the current state of the record, however, the Court must defer to the reasonable findings of the ALJ and his conclusion that Plaintiff is not disabled within the meaning of the Social Security Act, and that she is able to perform a limited range of work at the light exertional levels.

For the hereinabove stated reasons, the Court will **GRANT** the Motion for Summary Judgment filed by the Commissioner and **DENY** the Motion for Summary Judgment filed by Plaintiff. An appropriate Order follows.

                                             McVerry, J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Shenetta Jones, | ) |
|     Plaintiff, | ) |
| v. | ) 1:14-cv-282 |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY, | ) |
|     Defendant. | ) |

## ORDER

**AND NOW**, this 10th day of June, 2015, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED,** and **DECREED** that Defendant's MOTION FOR SUMMARY JUDGMENT (ECF No. 8) is **GRANTED**, and Plaintiff's MOTION FOR SUMMARY JUDGMENT (ECF No. 10) is **DENIED**.

BY THE COURT:

s/ Terrence F. McVerry
United States District Judge

cc: **Kenneth Hiller**
Email: khiller@kennethhiller.com

**Christian A. Trabold**
Email: christian.a.trabold@usdoj.gov

(via CM/ECF)